ALEXANDER WILSON, Trustee of the Children of THOMAS GRAHAM, *v.* HENRY HOWSER, JOHN GALBRAITH, DAVID AYRES, and Others.

1. Where land extended on a *fi. fa.* is levied and condemned on an *alias fi. fa.*, issued without leave on the same judgment, and is sold, the defendant, omitting to object to the second inquest and sale, waives his right as against the purchaser, in favour of whom, in such case, every intendment will be made.

2. It seems that a sheriff's deed, defectively acknowledged, is evidence to show that a party holding under it is not an intruder merely, but is in under colour of title. Independently of this, in the present case, the title having been deemed good in 'a former action of ejectment, such deed would entitle him to defend against one claiming under a fraudulent or voluntary deed.

3. Though one may be largely indebted, yet, if his debts are not large in proportion to his property, a voluntary conveyance by him may be good notwithstanding. The debts must bear some proportion to his property, which may render the payment of them doubtful, to avoid such conveyance on that ground.

ERROR to the Common Pleas of Armstrong.

*Oct.* 15. This was ejectment brought by Alexander Wilson, trustee of the children of Thomas Graham, against Henry Howser (with whom were admitted to defend John Galbraith, David Ayres, and others), to recover 230 acres of land.

The facts of this case are sufficiently set forth in the charge of KNOX, President, which was to the effect following:

" In order to show title in himself the plaintiff has given in evidence a patent, bearing date 25th April, 1831, to Nancy Murphy, for 355 acres, which includes the land in dispute, and which recites the Fritz warrant and survey, and further recites that the right of

K

the warrantee, as well as of the actual settler, has vested in Nancy Murphy. This is followed by a deed of 28th May, 1840, from Nancy Murphy to the plaintiff, as trustee for the daughters of Thomas Graham, for that portion of the Fritz warrant now in dispute. The defendant claims under the same original title, and, to show his right, has given in evidence:—31st December, 1794, warrant to Adam Fritz for 400 acres; 11th May, 1795, survey to same for 355 a. 147 p.; and proves that Hamilton Redick entered upon this tract, as a settler, somewhere from 1794 to 1799, cleared 20 to 40 acres, built a cabin, &c., and continued in possession until 1813 or 1814, when he sold his right to Graham, who entered into possession of this and an adjoining tract in 1815 or 1816, and continued to reside there, with short intervals, until his death in 1840. On 25th November, 1815, Graham conveyed to Nancy Murphy the Fritz warrant and the settler's portion of the Johnston tract, which Graham had purchased of Menough, said to contain in all 595 acres. This deed was acknowledged 1st January, 1816, and recorded 25th September, 1829. To September T., 1819, John Field, for Baldwin & Barlow, obtained judgment against Graham for $432, which was entered 21st Sept. 1819, on bond dated 22d October, 1818. A *fi. fa.* issued to December T., 1819, which was returned 'levied upon land, inquisition, and extension.' On the execution docket is this entry:—'By an agreement filed, J. M. to ascertain balance due on this and sundry other judgments, 18th March, 1829, report filed finds a balance of debt. $317.03, costs $25.26; same day judgment on the report.' To March T., 1833, *fi. fa.* issued, which was returned levied upon the land in dispute. 22d February, 1834, inquisition and condemnation. To March T., 1834, *ven. ex.* issued, and returned lands sold to William Ayres for $97.00. 20th September, 1834, deed, Chambers Orr, sheriff, to William Ayres. At September T., 1841, Ayres brought his action of ejectment against Mary Ann Graham and others for 400 acres, embracing the land in dispute, and 22d December, 1842, obtained a verdict in his favour, and by Henry Howser entered into possession, which has been continued until the present time. The daughters, who are now claiming by their trustee, were in possession with the remainder of their family, at the time of the above recovery.

"From this brief statement of the case it will be seen, that both parties claim under the title derived from Thomas Graham, the plaintiff, by virtue of the deed of 25th November, 1815, to Nancy

Murphy, which was the foundation of the patent, and the defendant by the sheriff's deed of 20th September, 1834. The plaintiff's deed, being prior in point of time, if valid, vests the estate in him; but, before we come to this branch of the cause, we will notice the objections to defendant's title, for it is alleged by the plaintiff that the defendant is not in a position to raise the question whether the deed of 25th November, 1815, is a good or bad one; 1st, because the lien of his judgment against Thomas Graham was lost before the sale; 2d, because there is no evidence that the sheriff's deed to him was ever acknowledged. As to the first objection, it is true, that at the time of the sale the lien of the judgment was gone as to subsequent judgment creditors; but surely this would not operate to prevent the interest of the debtor passing by the sale. The judgment as to him still remained in full force, and, when the land was actually seized by the writ of *fi. fa.*, there was sufficient lien to pass the defendant's title, where that seizure was followed by a sheriff's sale. We instruct you that this objection is not a valid one. Upon the face of the sheriff's deed there is the written statement of the prothonotary, not under seal, however, that it was duly acknowledged. Of this no entry is found upon the records. We are of opinion that this is sufficient to authorize the defendants to raise the question of the fairness of the plaintiff's deed. And this brings us to the real matter in contest here, being whether the deed of Graham to Nancy Murphy, of 15th November, 1815, passed his interest as against the present defendants. The objections to this deed are, 1st, that it was not delivered previous to 20th September, 1834, that being the date of the sheriff's deed; 2d, that it was a voluntary conveyance, intended to hinder, delay, and defraud creditors, and therefore void. Upon the first point the jury was instructed 'that it was necessary to the validity of a deed that it should be delivered; and, in order to give priority to this deed over that of the sheriff, it is necessary that it should have been delivered previous to 20th September, 1834 : that being placed upon record in September, 1829, was *primâ facie* evidence that it had been previously delivered, and that the burthen of proof, to show it had not, was upon the defendant.' After calling their attention to the evidence upon this point, they were further instructed, ' that if they found the deed had not been delivered either to Nancy Murphy or to some other person for her, but was retained, by and under the exclusive control of Graham, up to the date of the sheriff's deed to William Ayres, the plaintiff could not recover;

but if they found that it had been delivered previous to that time, the only remaining question was, what was its character? Was it made in pursuance of a *bonâ fide* bargain and sale between the parties, with the honest intention on the one hand, of selling for a fair consideration, and on the other, to purchase and become the owner of the land in exchange for the consideration paid? Or was it made for the purpose of hindering, delaying, or defrauding creditors? This question of fraud was exclusively one for the jury; but it must be remembered that fraud is never to be presumed—it must be proved—and when once established to the satisfaction of the jury, it renders void the transaction, so far as the rights of those to be defrauded are concerned. The defendant, to prove the fraud, relies upon—1. Inadequacy of price. This is always to be taken into consideration upon the question of fraud, but the weight of it depends upon the extent of the inadequacy. If grossly inadequate, the evidence is strong; if otherwise, it is comparatively weakened, as it approaches to, or recedes from, the actual value. 2. Retention of possession under claim of right, exercising acts of ownership, making improvements, &c. 3. Indebtedness of the grantor, and relationship existing between him and the grantee, she being his mother-in-law. 4. Payment of patent fees by Graham. 5. Want of evidence of payment of consideration. 6. Reconveyance by Nancy Murphy to plaintiff, in trust for the daughters of the grantor, for a nominal consideration. These are all proper matters for the jury to consider, and if, taken together, they satisfy you that the deed was fraudulent, the plaintiff is not entitled to recover. But it is said by the plaintiff that there is nothing to connect Nancy Murphy with the fraud, even if it is fraud against the grantor, Graham, and that, in the absence of such evidence, the deed is good as to her. This depends upon the question of consideration. If the deed was fraudulent on the part of Graham, and without valuable consideration passing from Nancy Murphy, it is unnecessary that she should be a party to the fraud; but if Nancy Murphy was an innocent purchaser, paying a valuable consideration, viz. the purchase-money, without knowledge of the fraudulent intention of the grantor, such fraud, even if it existed, would not affect her, but in order to avail herself of the benefit of this position, she must satisfy the jury that the purchase-money was actually paid by other evidence than that contained on the face of the deed. If this deed was voluntary, that is, without consideration, other than *love and affection*, it might still be void as against creditors, if at the time it was executed

the grantor was largely indebted, or was engaged in hazardous business, even although there was no actual intention of defrauding any one—in such case the law avoids the conveyance."

The plaintiff excepted to this charge, as he had also done to the admission of certain portions of the evidence, which latter exceptions will be more specifically stated in the assignment of errors.

The verdict was in favour of the defendants.

In this Court the following errors were assigned:

1. The Court erred in admitting evidence of the indebtedness of Graham, subsequent to the date of his deed to Nancy Murphy, and of its acknowledgment on 1st January, 1816. This evidence consisted of records of mortgages, and of judgments obtained or confessed, between 1817 and 1825.

2. The Court erred in admitting in evidence the record of a judgment, John Fields to the use of Baldwin & Barlow, against Graham : 1. to show a revival of it by an entry on the execution docket; and 2. to show a sale upon it of the property in dispute by the sheriff to W. Ayres.

3. The Court erred in admitting in evidence the sheriff's deed to W. Ayres.

4. The Court erred in charging the jury—"we are of opinion that this—the sheriff's deed to W. Ayres—is sufficient to authorize the defendants to raise the question of the fairness of the plaintiff's deed."

5. The Court erred in charging the jury—"if the deed is fraudulent on the part of Graham, and without valuable consideration passing from Nancy Murphy, it is unnecessary that she should be a party to the fraud."

6. The Court erred in charging the jury—"if the deed was voluntary, that is, without consideration, &c., &c.," being the last sentence of the charge.

*Lee* and *Foster*, for the plaintiff in error.

1. Evidence of that sort should be of indebtedness at the time of making the deed, bearing some proportion to the value of property retained : 1 Story's Eq. § 356; Mateer *v.* Hissim, 1 Pa. Rep. 164; Posten *v.* Posten, 4 Wh. 27. Knowledge must be brought home to grantee. There must be proof of actual fraud as to subsequent creditors and purchasers : 1 Story's Eq. §§ 361, 362, 365; Lancaster *v.* Dolan, 1 Rawle, 231; Hood *v.* Fahnestock, 8 Watts, 489; 5 Day's R. 341.

2. There was no revival of this judgment: McCleary's Appeal, 1 W. & S. 299. The lien of it was gone, and no valid sale could be made upon it. The proceeds would go to the alleged voluntary grantee: Shorman v. The Bank, 5 W. & S. 376; Bailey v. Bowman, 6 W. & S. 118.

The plaintiff in this judgment could not, after a levy and extent on his *fi. fa.*, issue an *alias fi. fa.* and levy on other land without discharging the first levy: McCullough v. Guetner, 1 Binn. 215; Burd v. Dansdale, 2 Binn. 92. The acknowledgment of the sheriff's deed, if there ever was one, does not preclude inquiry into the legality of the proceedings by which sale was effected: Cash v. Tozer, 1 W. & S. 528; Sergeant v. Ford, 2 W. & S. 122; Braddee v. Brownfield, Id. 280.

3. Faust v. Ross, 1 W. & S. 501; Bellas v. McCarty, 10 W. 13; Patterson v. Stewart, Id. 472.

4. If defendant's deed was therefore vicious, then he cannot contest our title on the ground of fraud, being neither creditor nor purchaser: Hood v. Fahnestock.

5. If Graham was able to pay his debts from his retained property when he executed the deed to Mrs. Murphy, it would be valid, though voluntary, without there was actual fraud involving both parties to it.

6. That would depend on the relative value the property retained bore to the debts at the time of the execution of the deed, to which the Court does not call the attention of the jury.

*Purviance* and *Galbraith*, contrà.

1. A number of witnesses proved that Graham was in failing circumstances in 1815 and before. But the after indebtedness bears on the *animus* with which the deed was made. In England the rule is, that one actually indebted and conveying voluntarily, always means it to be in fraud of creditors: Townshend v. Wendham, 2 Vesey, 10. The evidence was proper, coupled with other evidence of acts evincing fraud.

2. The entry on the execution docket was a mere irregularity, of which plaintiff cannot avail himself: Bowen v. Bowen, 6 W. & S. 504. It did not affect the lien: Fricke's Appeal, 1 Watts, 393; Boal's Appeal, 2 Rawle, 37. The judgment was in full force as between the plaintiff in it and Graham, and no presumption of payment could arise short of twenty years. The levy was a lien, the judgment being in force, and, though the proceedings may have been

irregular, a sale would convey the title to the purchaser : Hinds *v.* Scott, 1 Jones, 19.

3. The sheriff's deed to Ayres was certified by the proper officer, and the want of a seal was cured by Act 19th February, 1835, Dunlop, 582; Jaques *v.* Weeks, 7 Watts, 261. But even if defective, we could use it to give us colourable title. Being in possession upon this title under the first ejectment, we could use it to show we were not intruders. We could defend it against one claiming under a fraudulent or voluntary deed. The possession of the sheriff's deed is *primâ facie* evidence of delivery and payment of purchase-money : Hinds *v.* Scott.

No attempt was made to prove the consideration of the deed by Graham to Mrs. Murphy. Other evidence than the receipt in the deed is necessary to establish payment, where there is proof of fraud : Rogers *v.* Hall, 4 Watts, 359.

The opinion of this Court was delivered by

ROGERS, J.—The property in controversy was levied on a *fi. fa.* issued on a judgment of John Field, for the use of Baldwin & Barlow *v.* Thomas Graham, who at the time was in the possession, and the apparent owner of the property. Inquisition was held and land extended. Afterwards an *alias fi. fa.* was issued on the same judgment, the same property levied on, inquisition held, and property condemned. The plaintiff in error contends that the second inquisition was erroneous and void. But although erroneous, it does not necessarily follow that it is void : In McCullough *v.* Guetner, 1 Binn. 214, it is ruled that after inquest has returned that the rents and profits will pay in seven years, the plaintiff cannot discontinue his *fi. fa.*, and take out a new one *without leave of the Court*, because, as the Court truly says, the plaintiff might otherwise set aside the proceeding and levy again on the same land repeatedly, until he gets a jury to condemn it, which would take away from the defendant the benefit of the Act of Assembly. Had the defendant applied to the Court, no doubt they would have set aside the second inquest, if levied without leave of the Court; but having failed to do so, we will make every intendment in favour of the vendee of the sheriff. Although it does not expressly appear, we will presume the second execution was with leave of the Court, which would in all cases be granted where other debts were contracted in the mean time, which the property would not pay in seven years. Although he may, the creditor is not bound to take pos-

session under the first inquest, and, if other debts are contracted, he may sell the lands of his debtor. Having omitted to object to the second inquest and sale, the debtor waives his right, as against the purchaser. It would be unjust for him to pocket the purchase-money, or which is the same thing, allow it to be paid to his creditors without exception, and then object to the sale as null and void. There is nothing in the second bill.

But it is contended there is error in the third bill, because the acknowledgment to the sheriff's deed was signed by the prothonotary, not under the seal of office, and no record of its acknowledgment is to be found. This defect is cured by the Act of 2d April, 1844, Purdon, 433; an Act relating to sheriffs' deeds. "The certificate of the prothonotary of any Court in this Commonwealth to an acknowledgment of a sheriff's deed, heretofore made, though not under seal of office, shall be sufficient evidence of such acknowledgment, notwithstanding no other record was made thereof at the time of such acknowledgment; *provided*, that the provisions of this section shall not be construed to affect any *bonâ fide* holder or purchaser, who has neither actual or constructive notice of the execution of such sheriff's deed." As the plaintiff is not in condition to claim the benefit of the proviso, the Act rules the exception. This disposes of the bills of exception, the first being properly abandoned. But, independently of these considerations, the objection could not avail the plaintiff. The title being deemed good in a former action of ejectment, that of itself would show that the defendant was not a mere intruder, but entered under colour of title. This would entitle him to defend against a plaintiff who claimed under a fraudulent or voluntary deed.

We come now to examine the exceptions to the charge, one of which has something more substantial in it. *Primâ facie*, the consideration, named in the deed, is the real consideration, and the presumption is, that it was paid by the vendee in good faith. But where there is proof, however slight, of fraud, the *onus* of payment is thrown upon the vendee, and other evidence than the receipt to the deed would be necessary to establish payment of the purchase-money: Rogers *v.* Hall, 4 Watts, 359. And this would seem, in view of the testimony, to have been the intention of the Court. If, therefore, there was nothing else in the case, I should not feel disposed to reverse the judgment on the first exception to the charge. But the Court further instructed the jury—"If the deed was voluntary, that is, without consideration other than love and affection,

it might still be void, as against creditors, if at the time it was executed the grantor was largely indebted, or was engaged in a hazardous business, even although there was no actual intention of defrauding any one." This part of the charge may have misled the jury, as the rule laid down by the Court is not true without qualification. For although a person may in the abstract be largely indebted, yet, if the debts are not large in proportion to his property, a voluntary conveyance may be good notwithstanding. This distinction is taken in Mateer *v.* Hissim, 3 Pa. Rep. 160, and is the undoubted law of this State. It is there ruled, that the statute of 13 Elizabeth does not render a conveyance void made by a man simply because he was indebted. The debts must bear some proportion to the property of the grantor, which may render the payment of his debts doubtful. To the same effect is Thompson *v.* Dougherty, 12 S. & R. 448; 1 Smith's L. C. 34. This is the law in the case of voluntary deeds made *bonâ fide*, for love and affection, without any intentional fraud. When there is an actual fraud imputed to the grantor, the case depends on other considerations, which it is unnecessary at this time to notice. For the last exception the judgment is reversed, and a *venire de novo* awarded.